UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE TU,<br><br>                                  Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC., TRANS<br>UNION LLC, HAPPY MONEY,<br>INC.,<br><br>                                  Defendants. | Case No.:  24-cv-1221-WQH-MSB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are: (1) the Motion to Compel Arbitration (ECF No. 24) filed by Defendant Experian Information Solutions, Inc. ("Experian"), and (2) the Joint Motion to Stay Pending Arbitration Between Plaintiff and Defendant Happy Money, Inc. (ECF No. 29) filed by Experian and Defendant Trans Union, LLC ("Trans Union") (collectively, these credit reporting agencies are referred to as the "CRA Defendants").

## I.   PROCEDURAL BACKGROUND

On July 17, 2024, Plaintiff Connie Tu ("Plaintiff") initiated this action by filing a Complaint against Experian, Trans Union, and Defendant Happy Money, Inc. ("Happy Money"), asserting claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the California Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.14 *et seq.* (ECF No. 1, Compl.)

On August 15, 2024, Trans Union filed an Answer to the Complaint. (ECF No. 9.)

On August 21, 2024, Experian filed an Answer to the Complaint. (ECF No. 16.)

On September 18, 2024, Plaintiff and Happy Money filed a Joint Stipulation to Stay as to Defendant Happy Money, Inc. Only, Pending Arbitration (the "Joint Stipulation"). (ECF No. 19.) The Joint Stipulation requested the Court stay this action "as to Defendant Happy Money only … until the conclusion of the arbitration" between Plaintiff and Happy Money. *Id.* at 2.

On September 24, 2024, the Court granted the Joint Stipulation and stayed the action as to Happy Money only, "pending completion of the arbitration proceedings." (ECF No. 20 at 1.)

On October 31, 2024, Experian filed the Motion to Compel Arbitration. (ECF No. 24.) On November 25, 2024, Plaintiff filed a Response in opposition to the Motion to Compel Arbitration. (ECF No. 32.) On November 26, 2024, Experian filed a Reply in support of the Motion to Compel Arbitration. (ECF No. 33.)

On January 13, 2025, Plaintiff filed a Notice of Supplemental Authority in support of her opposition to Experian's Motion to Compel Arbitration. (ECF No. 41.) On the same day, Experian filed a Response to Plaintiff's Notice of Supplemental Authority. (ECF No. 42.) On January 14, 2025, and January 15, 2025, Experian filed Notices of Supplemental Authority in support of its Motion to Compel Arbitration. (ECF Nos. 43 & 44.)

On November 13, 2024, the CRA Defendants filed the Joint Motion to Stay Pending Arbitration Between Plaintiff and Defendant Happy Money, Inc. ("Joint Motion to Stay"). (ECF No. 29.) On December 9, 2024, Plaintiff filed a Response in opposition to the Joint Motion to Stay. (ECF No. 37.)

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff is employed as a Telecommunications Specialist with the Department of Defense, which requires her to have a "clean credit report" to maintain her security clearance. (Compl. ¶¶ 47–48.) "In or around August 2023, Plaintiff requested her consumer reports from the [CRA] Defendants." *Id.* ¶ 50. After reviewing her credit reports, "Plaintiff

noticed that Happy Money was reporting that Plaintiff had a charge-off and owed a balance of $29,570.08." *Id.* ¶ 51. Plaintiff and Happy Money subsequently entered into a Settlement Agreement requiring Plaintiff to "make a one-time payment of $16,263.54," and on August 15, 2023, "Plaintiff paid the settlement amount in full." *Id.* ¶¶ 52–54. "[O]n or about January 29, 2024, Happy Money sent Plaintiff a letter confirming her account was settled in full as of September 15, 2023." *Id.* ¶ 56.

"In or around January 2024, Plaintiff decided to review her credit file from Experian" and "noticed that Experian was reporting her Happy Money account with an outstanding balance of $13,306.00." *Id.* ¶¶ 58–59. Plaintiff disputed the Happy Money account and "requested that Experian reinvestigate the Happy Money account, correct the reporting, and for Experian to send her a corrected copy of her credit report." *Id.* ¶¶ 64, 66. "Experian failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 dispute," and "on or about January 27, 2024, Experian … stat[ed] that Happy Money had certified to Experian that the disputed information was accurate." *Id.* ¶¶ 69–70. In or around January 2024, Happy Money "verified the disputed information as accurate to Experian" and "failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff." *Id.* ¶¶ 86–87. "Thereafter, Experian failed to correct or delete the Happy Money account in Plaintiff's credit file." *Id.* ¶ 71.

In or around late January 2024, Plaintiff contacted Happy Money and explained that "Experian was inaccurately reporting that Plaintiff owed a balance on the Happy Money Account." *Id.* ¶¶ 90–91. "Happy Money confirmed that Plaintiff did not owe a balance and that she had settled the Happy Money account." *Id.* ¶ 92.

"In or around February 2024, Plaintiff decided to obtain a copy of her credit file from each of the [CRA] Defendants and non-party Equifax" and found that "the Happy Money Account was still being reported by all three consumer reporting agencies as having a balance other than zero." *Id.* ¶¶ 95–96. "On or about February 29, 2024, Plaintiff disputed the Happy Money account with each of the [CRA] Defendants and non-party Equifax" and requested that they "reinvestigate the disputed information, correct the reporting, and for

each to send her a corrected copy of her credit report." *Id.* ¶¶ 97, 99. Trans Union "did not respond to Plaintiff's February 29, 2024 dispute," "failed to adequately review all of the information provided to it by Plaintiff," and "failed to conduct a reasonable reinvestigation." *Id.* ¶¶ 101–03. "By contrast, Experian corrected Plaintiff's Happy Money Account tradeline to properly reflect that Plaintiff had a zero-dollar balance." *Id.* ¶ 105.

"As of May 2024, Trans Union was still reporting that Plaintiff owed a balance on the Happy Money Account," so "Plaintiff disputed [the] account directly with Happy Money in the hopes of correcting her credit reports." *Id.* ¶¶ 112–13. "On or about May 12, 2024, Plaintiff contacted Happy Money to initiate a direct dispute." *Id.* ¶ 114. "On or about May 16, 2024, Happy Money responded to Plaintiff's direct dispute acknowledging that Trans Union was indeed inaccurately reporting the Happy Money Account and stating that it would send a corrected balance to Trans Union." *Id.* ¶ 115. "Plaintiff reasonably believes that Happy Money continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff owed a balance to Happy Money." *Id.* ¶ 116. "Plaintiff reasonably believes that the [CRA] Defendants continued to publish that Plaintiff owed a balance to Happy Money." *Id.* ¶ 117.

Plaintiff asserts claims against the CRA Defendants for failure to follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14, and failure to perform a reasonable reinvestigation, in violation of 15 U.S.C. § 1681i and Cal. Civ. Code § 1785.16. Plaintiff asserts claims against Happy Money for failure to conduct an investigation of the disputed information and review all relevant information provided by the consumer, in violation of 15 U.S.C. § 1681s–2(b) and Cal. Civ. Code § 1785.25.

Plaintiff seeks a determination that the CRA Defendants and Happy Money negligently and/or willfully violated the FCRA and the CCRAA; actual, statutory, and punitive damages; reasonable attorneys' fees and costs; and other such relief as the Court deems appropriate and just.

/ / /

1

## III. DISCUSSION

### A. Motion to Compel Arbitration

#### 1. Legal Standard

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation omitted). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Generally, in considering whether to compel arbitration, the court must determine two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation omitted). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* [delegate arbitrability to an arbitrator].'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

In determining whether the parties agreed to arbitrate a dispute, courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation omitted). The party seeking to compel arbitration bears "the burden of proving the existence of an enforceable arbitration agreement by a preponderance of the evidence." *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th 1152, 1157 (Ct. App. 2017). If the moving party satisfies its burden, "the burden shifts to

5

the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." *Id.* at 1160. "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (Ct. App. 2012). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

When resolving a motion to compel arbitration, "[t]he summary judgment standard [of Rule 56 of the Federal Rules of Civil Procedure] is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (internal quotation omitted). In other words, a court evaluating a motion to compel arbitration must view the evidence in the light most favorable to the nonmoving party and consider whether there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A dispute is genuine when 'a reasonable trier of fact could resolve the issue in the non-movant's favor.'" *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1219 (9th Cir. 2021) (quoting *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)). In making this assessment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the nonmoving party cannot merely demonstrate "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient[.]").

Section 4 of the FAA states that "[i]f the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "To implement this language, once a district court concludes that there are genuine disputes of

material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. "The district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial." *Id.* at 670. But if the opposing party demands a jury trial, "the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." *Id.* (quoting 9 U.S.C. § 4).

### 2.    Contentions

Experian contends that the Court should compel Plaintiff to arbitrate the claims against it because Plaintiff is a member of CreditWorks, a credit monitoring service provided by Experian's affiliate, ConsumerInfo.com, Inc. ("CIC"), which does business as Experian Consumer Services ("ECS"). (ECF No. 24-1 at 9.) Experian contends that when Plaintiff enrolled in CreditWorks, she agreed to ECS's Terms of Use Agreement, which contains an Arbitration Agreement. *Id.* Experian contends that the Arbitration Agreement requires Plaintiff to arbitrate "claims brought … against ECS, … including, without limitation, the Fair Credit Reporting Act." *See id.*; *see also* ECF No. 24-2 at 13. Experian contends that the Arbitration Agreement defines "ECS" to include its "affiliates," rendering Experian a party to the Arbitration Agreement. (ECF No. 24-1 at 9, 13–14.) Experian contends that it may enforce the arbitration provision as either a party to the Arbitration Agreement or as a third-party beneficiary. *See id.* at 13–17. Experian contends that if there is any question as to whether Plaintiff's claims fall within the scope of the Arbitration Agreement, the issue must be decided by an arbitrator because the Arbitration Agreement delegates questions of arbitrability to the arbitrator. *See id.* at 17–18.

Experian relies on a declaration from Dan Smith ("Smith"), the Director of Product Operations for CIC, to support its contentions. (ECF No. 24-2 ¶ 1.) Smith states in his declaration that "[b]ased upon [his] review of CIC's membership enrollment data maintained in the regular course of business, including data specific to Plaintiff's

membership, on August 11, 2023, Plaintiff enrolled in CreditWorks." *Id.* ¶ 3. Smith describes the webform Plaintiff "had to complete" "[i]n order to successfully enroll" in CreditWorks, explaining that the webform contained the following disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id.* Smith states that the phrase "Terms of Use Agreement" was "off-set in bold blue text" and contained a hyperlink. *Id.* ¶ 4. When clicked, the hyperlink would open "an overlay modal … within the consumer's web browser containing the entire text of the Terms of Use Agreement," which "contain an Arbitration Agreement." *Id.* ¶¶ 4, 6. Smith states that "Plaintiff clicked the 'Create Your Account' button, thereby accepting and agreeing to the Terms of Use Agreement." *Id.* ¶ 5. Smith explains that "Plaintiff would not have been able to successfully enroll in Creditworks unless she clicked that button." *Id.* Smith attaches an exhibit to his declaration with "[a] true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks." *Id.* ¶ 3; *see also id.* at 6–7. Smith also attaches an exhibit with "[a] true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks." *Id.* ¶ 5; *see also id.* at 8–39.

Plaintiff contends that Experian cannot meet its burden to demonstrate the existence of an arbitration agreement because Smith's declaration is inadmissible due to his lack of personal knowledge as to what Plaintiff "accessed, saw, or clicked." (ECF No. 32 at 14.) Plaintiff submits her own declaration, asserting that she "do[es] not recall signing up for an account with Experian.com," and that "[u]ntil the filing of this lawsuit, [she] had never heard of CreditWorks and [does] not know what CreditWorks is." (ECF No. 32-2 ¶¶ 2, 5.) Plaintiff contends that, even if the Court were to consider Smith's declaration, Experian's "clickwrap agreement"[1] is insufficient to establish mutual assent to the terms of the

---

[1] A "clickwrap" agreement "requires users to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). In contrast, a "browse-wrap" agreement "is one in which an internet user accepts a website's terms of use merely by browsing the site." *Id.* (citation omitted). Plaintiff primarily refers to Experian's agreement as

Arbitration Agreement under California law. (*See* ECF No. 32 at 20–24.) Plaintiff accordingly requests that the Court deny Experian's Motion to Compel Arbitration with prejudice. *Id.* at 24. In the alternative, Plaintiff requests that the Court deny the Motion to Compel Arbitration without prejudice "and direct the parties to conduct discovery into contract formation." *Id.* at 24–25.

### 3.    Admissibility of Smith's Declaration

As a preliminary matter, the Court must determine whether Smith's declaration is admissible to support Experian's Motion to Compel Arbitration.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Personal knowledge may also be "inferred from a declarant's position." *Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301, 1306 (E.D. Cal. 2024) (quoting *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000)). "[T]he requirement of personal knowledge imposes only a 'minimal' burden on a witness." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013).

Plaintiff contends that Smith "does not know Plaintiff," "has never met Plaintiff," and "was not present when Plaintiff allegedly agreed to the terms and conditions" at issue. (ECF No. 32 at 15.) Plaintiff contends that whereas "a witness's professed knowledge must be derived from direct experience or observation," Smith's declaration only "boil[s] down to Smith's speculations about what Plaintiff must have done." *Id.* at 14. Experian contends that Smith's declaration "is based on his personal knowledge, which he acquired in the

---

a "clickwrap agreement," but she also contends that Experian's agreement "blends these flavors, with a 'browse-wrap' hyperlink that leads to a lengthy 'Terms of Use' document[] containing, in relevant part, an arbitration agreement embedded in the purported terms above a 'clickwrap' 'I agree' button." (ECF No. 32 at 21.)

course and scope of his job responsibilities and through the review of pertinent documents and internal records." (ECF No. 33 at 7.)

Smith states in his declaration that he has been employed by CIC for fifteen years and currently serves as the Director of Product Operations. (ECF No. 24-2 ¶ 1.) His duties "include supporting the consumer enrollment process into CreditWorks," which requires him to "be familiar with, among other things, how consumers enroll, the forms they must complete to enroll," and "the Terms of Use governing such services." *Id.* Smith's duties also require him to be familiar with "Experian's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and [the] date and time of the consumer's acceptance of the Terms of Use." *Id.* Smith is "able to retrieve a consumer's CreditWorks membership information upon receipt of that consumer's personally identifiable information," which enables him "to confirm the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to, and the exact path the consumer encountered when completing their enrollment into CreditWorks." *Id.* Smith's statements in his declaration are based upon his "personal knowledge, including knowledge acquired in the course and scope of [his] job responsibilities and through the review of pertinent documents maintained as business records …, including Experian's internal records that store CreditWorks account information." *Id.* Based upon these statements and the other contents of Smith's declaration, the Court agrees with Experian that Smith's declaration sufficiently demonstrates his personal knowledge as to the CreditWorks enrollment process and Plaintiff's enrollment in the credit monitoring service.

Plaintiff's reliance on non-binding authority, including *Austin v. Equifax Information Services, LLC*, fails to persuade the Court otherwise. *See* No. 3:22cv707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023). *Austin* involved a different declarant, David Williams, whose job description failed to "disclose[ ] personal knowledge of how the

system at issue works." *Id.* at *7. In contrast, Smith's declaration, as discussed above, explains how his duties as the Director of Product Operations for CIC require him to "be familiar with, among other things, how consumers enroll, the forms they must complete to enroll," and "the Terms of Use governing such services." (ECF No. 24-2 ¶ 1.) Moreover, multiple district courts within this circuit "have declined to follow *Austin*" when evaluating the admissibility of Smith's declaration in similar cases. *Oatway v. Experian Info. Sols., Inc.*, No. 2:24-cv-00523-LK, 2024 WL 4879822, at *5 (W.D. Wash. Nov. 25, 2024) (collecting cases); *see also Scribner*, 738 F. Supp. 3d at 1306 ("Plaintiff's reliance on [*Austin*], an unpublished decision from the Eastern District of Virginia that is currently on appeal, is unavailing."); *Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *9 (D. Ariz. Aug. 20, 2024) ("*Austin* is not to the contrary…. [H]ere, Smith's declaration provides a much more detailed description of his job duties and understanding of the enrollment process.").[2]

Plaintiff's other contentions in support of her argument that Smith lacks personal knowledge are similarly unavailing. Plaintiff contends that Smith's declaration does not

---

[2] As in *Oatway*, the Court finds that two of the other out-of-circuit cases cited by Plaintiff—*Lamonaco v. Experian Information Solutions, Inc.*, No. 6:23-cv-1326-PGB-LHP, 2024 WL 1703112 (M.D. Fla. Apr. 19, 2024) and *Newton v. Experian Information Solutions, Inc.*, No. CV 623-059, 2024 WL 3451895 (S.D. Ga. July 18, 2024)—are "also distinguishable decisions that go against the weight of authority in this circuit." 2024 WL 4879822, at *5 n.2. Like *Austin*, *Lamonaco* considered the declaration of another declarant, David Williams, whose declaration is not at issue here. *See Lamonaco*, 2024 WL 1703112, at *4–5. Additionally, although *Newton* found Smith lacked personal knowledge as to "what Plaintiff actually encountered when she enrolled in CreditWorks," the court nevertheless found Smith's declaration "sufficient to show he has personal knowledge of what a consumer generally would have encountered during the enrollment process." *Newton*, 2024 WL 3451895, at *4.

The Court also declines to follow *Simensky v. Experian Information Solutions, Inc.*, which Plaintiff submitted in a Notice of Supplemental Authority (ECF No. 41). No. 2:23cv2153, 2025 WL 47552 (W.D. Pa. Jan. 8, 2025). The Court rejects many of the same arguments that the court found persuasive in *Simensky*, including that "Smith has no firsthand knowledge that it was plaintiff who created such an account." *Id.* at *5.

Finally, *Stagger v. Experian Information Solutions, Inc.*, which Plaintiff cited in her Response in opposition, is inapposite because it did not analyze the admissibility of an Experian corporate representative's declaration, but instead involved a plaintiff's motion to compel Experian to respond to requests for production. *See* No. 21 C 2001, 2021 WL 5299791, at *1 (N.D. Ill. Nov. 15, 2021).

24-cv-1221-WQH-MSB

cite or include "any internal records establishing the IP address of the device" Plaintiff allegedly used to enroll in CreditWorks, an "audit or activity log for that IP address," "or any other record which in any way could prove to a reasonable jury that Plaintiff did, in fact, view and agree to the agreement Experian seeks to enforce here." (ECF No. 32 at 13.) However, as in *Scribner*, Plaintiff has "not provided legal authority from the Ninth Circuit requiring Mr. Smith to specifically identify every document on which he may have relied." 738 F. Supp. 3d at 1306; *see also Oatway*, 2024 WL 4879822, at *4 (rejecting the plaintiff's contention that Smith should have attached his "specific membership enrollment data" and noting that "Smith properly attached and authenticated the webforms and Terms of Use").

The Court is also unpersuaded by Plaintiff's contention that Smith's declaration is "deliberately vague, avoiding any specificity as to identification of any documents." (ECF No. 32 at 13.) The Court finds that Smith identifies the documents and records he reviewed with sufficient specificity to establish his personal knowledge. (*See* ECF No. 24-2 ¶ 1 (stating that Smith reviewed documents "including Experian's internal records that store CreditWorks account information"); *id.* ¶ 3 (stating that Smith reviewed CIC's "membership enrollment data …, including data specific to Plaintiff's membership"); *see also Williams*, 2024 WL 3876171, at *9 ("Smith's declaration *does* identify (albeit somewhat generically) the documents he reviewed.").)

The Court also declines to find that Smith lacks personal knowledge merely because he does not personally know Plaintiff and did not witness her enrollment in CreditWorks. *See Williams*, 2024 WL 3876171, at *9 (reasoning that the plaintiff's contentions that Smith lacks personal knowledge because he "was not present with customers when they accessed the webpages" and "does not know Plaintiff" would "impose[ ] a far greater burden for personal knowledge than what is required"). Furthermore, Smith is not, as Plaintiff contends, "speculat[ing] about what he thinks happened." (ECF No. 32 at 15.) Rather, Smith's declaration is based upon his review of business records, including CreditWorks account information and membership enrollment data, as well as his personal knowledge of the CreditWorks enrollment process, which he "acquired in the course and

scope of [his] job responsibilities." (ECF No. 24-2 ¶ 1.) Contrary to Plaintiff's assertion that a witness's personal knowledge "must be derived from direct experience or observation" (ECF No. 32 at 14), "personal knowledge can come from the review of the contents of business records." *Oatway*, 2024 WL 4879822, at *4 (quoting *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014)).

The Court accordingly "joins numerous other courts" in concluding that the statements in Smith's declaration are "sufficient to infer Smith's personal knowledge" regarding the CreditWorks enrollment process and Plaintiff's enrollment. *Bryant v. JPMorgan Chase Bank, N.A.*, ___ F. Supp. 3d ___, No. 2:24-cv-01912-SPG-SK, 2025 WL 313204, at *3 (C.D. Cal. Jan. 27, 2025) (collecting cases). Smith's declaration is admissible.

### 4.      Existence of an Agreement to Arbitrate

Having determined that Smith's declaration is admissible, the Court must next consider whether genuine disputes of material fact exist as to whether Plaintiff and Experian entered an agreement to arbitrate.

Smith's declaration states: "Based upon my review of CIC's membership enrollment data maintained in the regular course of business, including data specific to Plaintiff's membership, on August 11, 2023, Plaintiff enrolled in CreditWorks." (ECF No. 24-2 ¶ 3.) In contrast, Plaintiff's declaration states: "Until the filing of this lawsuit, I had never heard of CreditWorks and do not know what CreditWorks is." (ECF No. 32-2 ¶ 5.) Plaintiff also states: "I do not recall signing up for an account with Experian.com. To the best of my knowledge, I have not ever personally signed up for any account with Experian.com." *Id.* ¶ 2. Plaintiff further states: "To the best of my knowledge, I have never clicked anything indicating that I agreed to waive my right to a jury trial with Experian. Had I seen any such indication, I would not have signed up for an online Experian account." *Id.* ¶ 3.

The Complaint does not allege that Plaintiff enrolled in or created an account with Experian or CreditWorks. Instead, with respect to Experian, the Complaint contains allegations that Plaintiff "requested her consumer reports" (Compl. ¶ 50); "decided to

review her credit file," *id.* ¶ 58; "obtain[ed] a copy of her credit file," *id.* ¶ 95; and "requested that the [CRA] Defendants … reinvestigate the disputed information, correct the reporting, and … send her a corrected copy of her credit report," *id.* ¶ 99. No allegations in the Complaint reference CreditWorks. Smith's declaration does not state that Plaintiff would have been unable to request a credit report from Experian (or engage in any of the other activities alleged in the Complaint) without creating an account with CreditWorks.[3]

Experian contends in its Reply brief that Plaintiff's "lack of recollection does not create an issue of fact on contract formation." (ECF No. 33 at 2.) However, the cases Experian cites to support this contention are distinct from the case at bar because the plaintiffs in those cases did not dispute whether they had created accounts or signed up for memberships with the defendants. Instead, the plaintiffs in the cases cited by Experian asserted that they did not recall or did not see or read the arbitration provisions when creating or enrolling in their accounts. *See Zaimi v. Neiman Marcus Grp., LLC*, No. 2:22-cv-02972 AB (SKx), 2022 WL 19569536, at *1, *5 (C.D. Cal. Aug. 31, 2022) (where the complaint alleged that the plaintiff had "created an account on Defendant's website," the court concluded that the plaintiff's affidavit stating that she "never saw or read any arbitration provision at any time" "ha[d] no bearing on whether [the plaintiff] constructively assented to the arbitration or delegation provisions"); *Scribner*, 738 F. Supp. 3d at 1305, 1308 (where the plaintiff "admit[ted] he obtained a credit report from Experian and successfully created a CreditWorks account," the court concluded that "the website design … provided reasonably conspicuous notice of the Terms of Use" and that the plaintiff accordingly "had constructive notice that he would be bound to arbitrate his claims"); *Grice v. Uber Techs., Inc.*, No. CV 18-2995 PSG (GJSx), 2020 WL 497487, at *1, *11 (C.D. Cal. Jan. 7, 2020) (where the plaintiff's declaration confirmed that he "used

---

[3] Although Smith's declaration states that "all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from [Experian] through CreditWorks" (ECF No. 24-2 ¶ 7), Plaintiff's Complaint does not allege that she received credit reports from Experian on a "recurring basis."

the Uber App as both a Rider and Driver," and the defendant established that the plaintiff would have been "required to assent to the Terms and Conditions and the Services Agreement" before using these services, the court concluded that "Plaintiff's contention that he does not remember the opt-out option does not controvert [the defendant's] evidence to create a genuine issue of disputed fact as to whether Plaintiff agreed to the arbitration provision").

By contrast, here, Plaintiff's declaration states that she "do[es] not recall signing up for an account with Experian.com," and, "[t]o the best of [her] knowledge, [she] [has] not ever personally signed up for any account with Experian.com." (ECF No. 32-2 ¶ 2.) Plaintiff also states that "[u]ntil the filing of this lawsuit, [she] [had] never heard of CreditWorks and [does] not know what CreditWorks is." *Id.* ¶ 5.[4] Viewing all reasonable inferences in Plaintiff's favor, Plaintiff disputes the creation of the underlying account with Experian and CreditWorks, unlike in *Zaimi* and *Scribner*. And unlike in *Grice*, Experian has not produced evidence that Plaintiff would have been required to create an account with CreditWorks to engage in the activity alleged in the Complaint.

The circumstances in the present case are similar to those in *Henriques v. Experian Information Solutions*, where Experian also moved to compel arbitration based upon the plaintiff's purported enrollment in CreditWorks. *See* No. 23 CV 6366 (RPK) (LB), 2024 WL 5119106, at *2–3 (E.D.N.Y. Oct. 1, 2024). In *Henriques*, Smith's declaration provided a specific date that the plaintiff enrolled in CreditWorks. *Id.* at *2. The plaintiff responded with her own affidavit, which stated that she "never applied for a credit works account." *Id.* at *3. The court concluded that the plaintiff's statement "raise[d] a triable issue of fact

---

[4] In its Reply brief, Experian contends that Plaintiff does not "contest any of the facts in the Declaration of Dan Smith," including that Plaintiff "does not dispute that she created her account on the very day and in the very manner that Mr. Smith declares she did" and "[Plaintiff] does not dispute that, since enrolling in CreditWorks, she has continuously used the service." (ECF No. 33 at 2.) The Court, however, finds that, viewing all reasonable inferences in Plaintiff's favor, Plaintiff's declaration disputes these statements. *See Anderson*, 477 U.S. at 255 (stating that the court must draw "all justifiable inferences" in the nonmovant's favor).

that prevent[ed] [Experian] from compelling arbitration at [that] stage." *Id.* In reaching this conclusion, the court noted that, although Experian cited many cases in its briefing, "the Court [did] not find a single instance where a plaintiff actually disputed signing up for a CreditWorks account." *Id.* at *4. Likewise, here, the cases Experian cites in its Reply brief as examples where other courts have compelled arbitration without trial based upon the arbitration provision in the CreditWorks Terms of Use Agreement did not involve plaintiffs who disputed signing up for accounts with Experian or CreditWorks. *See, e.g.*, *Meeks v. Experian Info. Servs., Inc.*, Nos. 21-17023, 22-15028, 2022 WL 17958634, at *1 (9th Cir. Dec. 27, 2022) (stating that the plaintiffs "signed up for credit-monitoring services provided primarily by Experian's sister company, [ECS]"); *McLees v. Experian Info. Sols., Inc.*, No. 2:23-cv-04580-SPG-KS, 2024 WL 135940, at *3 (C.D. Cal. Jan. 11, 2024) ("Plaintiff does not dispute that she enrolled in the CreditWorks program …."); *Clark v. Trans Union LLC*, No. 2:24-cv-00783 WBS CKD, 2024 WL 4044130, at *1 n.1 (E.D. Cal. Sept. 4, 2024) ("Plaintiff concedes that he signed up for an 'Experian account[.]'"); *Myers v. Experian Info. Sols., Inc.*, 734 F. Supp. 3d 912, 921 (D. Ariz. 2024) ("Plaintiff may not remember agreeing to the Arbitration Agreement, but Plaintiff does not contest that she has an account with CreditWorks.").

The cases Experian cites in its Notices of Supplemental Authority (ECF Nos. 43 & 44) similarly involved plaintiffs who either conceded that they created an account with CreditWorks or Experian or acknowledged signing up for credit monitoring in some manner. *See Humphrey v. Equifax Info. Servs., LLC*, No. 2:24-cv-423-ACA, 2024 WL 5247164, at *1 (N.D. Ala. Dec. 30, 2024) ("[Plaintiff] attests that she has never heard of CreditWorks and never saw an arbitration agreement when she signed up for credit monitoring. She does not deny, however, that the credit monitoring service she signed up for was CreditWorks." (internal citation omitted)); *Taylor v. Experian Info. Sols., Inc.*, No. 1:24-cv-02156-AT-LTW, 2024 WL 5265371, at *8 (N.D. Ga. Dec. 31, 2024) ("Plaintiff admits that he 'signed up for Experian.com'" but "claims that he 'did not see an arbitration agreement, or any mention of an arbitration agreement.'"), *adopted by* No. 1:24-cv-02156-

AT, 2025 WL 431630 (N.D. Ga. Jan. 22, 2025); *Ellis v. Experian Info. Sols., Inc.*, No. 8:24-cv-00850-JLB-AEP, 2024 WL 5319487, at *2 (M.D. Fla. Dec. 23, 2024) ("Nor does Plaintiff maintain that he did not accept CreditWorks' Terms of Service. Instead, Plaintiff disputes only the sufficiency of Defendant Experian's evidence."), *adopted by* No. 8:24-cv-00850-JLB-AEP, 2025 WL 79637 (M.D. Fla. Jan. 13, 2025); *Hunt v. Experian Info. Sols., Inc.*, No. 5:24-cv-00348-TES, 2025 WL 104324, at *5 (M.D. Ga. Jan. 15, 2025) ("[Plaintiff] also doesn't contest that she clicked the button to agree to the Terms. Instead, she only contends that she doesn't recall seeing anything 'indicating that [she] would be waiving [her] right to a jury.'"). Accordingly, Experian's citations to persuasive authority provide no insight as to how the Court should resolve the factual dispute at hand.

Here, Smith's declaration states that "Plaintiff enrolled in CreditWorks" (ECF No. 24-2 ¶ 3), but Plaintiff's declaration states that she had never heard of CreditWorks prior to the filing of this lawsuit and that "[t]o the best of [her] knowledge, [she] [has] not ever personally signed up for any account with Experian.com," (ECF No. 32-2 ¶ 2). As in *Henriques*, "[t]he Court is left with affidavits of two individuals with personal knowledge arguing opposite sides of the same issue of fact." 2024 WL 5119106, at *4. The Court accordingly concludes that, based upon the current record, a genuine dispute of material fact exists as to whether Plaintiff enrolled in CreditWorks and thus encountered the webforms described in Smith's declaration. As a result, a genuine dispute of material fact exists as to whether Plaintiff and Experian entered into an agreement to arbitrate, rendering the Court unable to resolve the Motion to Compel Arbitration at this stage of the proceedings. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) ("[A] court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved." (alteration in original) (quoting *Hansen*, 1 F.4th at 671)).

### 5. Limited Discovery Regarding Contract Formation

Plaintiff contends that "Experian's blanket refusal thus far to produce any documentary evidence supportive of its assertions regarding contract formation warrants

denial with prejudice." (ECF No. 32 at 20 n.6.) In the alternative, Plaintiff requests that the Court deny Experian's Motion to Compel Arbitration without prejudice and "direct the parties to conduct discovery into contract formation." *Id.* Experian does not address Plaintiff's alternative request to conduct discovery in its Reply brief.

Under the FAA, "[i]f the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Thus, "once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. The Ninth Circuit has "confirmed that the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." *Knapke*, 38 F.4th at 833 (citing *Hansen*, 1 F.4th at 670). Courts have interpreted *Knapke* as permitting the parties to conduct discovery before the moving party files a renewed motion to compel arbitration. *See, e.g.*, *Vargison v. Paula's Choice, LLC*, No. 2:24-cv-00342-TL, 2025 WL 346197, at *8–9 (W.D. Wash. Jan. 30, 2025), *clarified on other grounds by* No. 2:24-cv-00342-TL, 2025 WL 822659 (W.D. Wash. Mar. 13, 2025); *Noel v. Roblox Corp.*, No. 3:24-cv-00963-JSC, 2024 WL 3747454, at *6 (N.D. Cal. Aug. 8, 2024).

Here, the present Motion to Compel Arbitration "is akin to the first phase [of federal civil lawsuits]: a motion to dismiss." *Noel*, 2024 WL 3747454, at *6. Because Experian has not demonstrated as a matter of law that it had an agreement to arbitrate with Plaintiff, "the case moves to the next phase: discovery." *Id.* "After discovery, the parties will brief—under the summary judgment standard—whether the record establishes as a matter of law" that Plaintiff entered into an arbitration agreement with Experian. *Id.* "If there remains a genuine dispute, the case will proceed to trial on the issue of the making of an arbitration agreement." *Id.*

The Court accordingly denies Experian's Motion to Compel Arbitration (ECF No. 24) without prejudice and directs the parties to conduct limited discovery as to the contract formation issue. Following this period of limited discovery, Experian may file a renewed motion to compel arbitration.[5]

### B.    Motion to Stay Pending Arbitration Between Plaintiff and Happy Money

#### 1.    Legal Standard

A district court has broad discretion to stay proceedings pending before it "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay is "an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55 (citations omitted). Competing interests affected by the grant or denial of a stay are (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party

---

[5] Because the Court concludes that a genuine dispute of material fact exists as to whether Plaintiff enrolled in CreditWorks, the Court is precluded from determining whether Plaintiff and Experian entered into an agreement to arbitrate. The Court accordingly does not reach the parties' remaining arguments, including whether, assuming Plaintiff created an account with CreditWorks, CreditWorks's clickwrap agreement is sufficient to establish mutual assent to the terms of the Arbitration Agreement under California law.

may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

### 2.    Contentions

The CRA Defendants contend that the Court should stay all proceedings in this matter pending the completion of Plaintiff's arbitration with Happy Money, the third defendant in this action. The CRA Defendants contend that Plaintiff's FCRA claims against them depend upon Plaintiff proving that the information reported on her credit reports was inaccurate, and this issue will be determined during Plaintiff's arbitration with Happy Money. The CRA Defendants also contend that, absent a stay, this action risks violating the "one satisfaction rule," which precludes a plaintiff from recovering her damages twice from separate parties. The CRA Defendants contend that staying the case as to all defendants "will prevent inconsistent findings and results and [is] in the best interests of judicial economy and efficiency." (ECF No. 29 at 4.)

Plaintiff contends that the CRA Defendants fail to meet their burden of demonstrating why a stay would not prejudice Plaintiff. Plaintiff contends that she would be prejudiced by a stay because she would be delayed in conducting discovery and litigating this action "until an uncertain date in the future." (ECF No. 37 at 16.) Plaintiff contends that the CRA Defendants do not specifically identify what "inconsistent results" would arise if this litigation proceeds and do not explain how those results might affect the disposition of Plaintiff's claims or have a preclusive effect on any issue in this action. Plaintiff contends that courts in the Ninth Circuit have repeatedly held that the one satisfaction rule does not apply in FCRA cases.

/ / /

/ / /

### 3.     Analysis of the *Landis* Factors

#### i.     Damage to Plaintiff from Granting a Stay

The CRA Defendants contend that staying this action pending the completion of Plaintiff's arbitration with Happy Money would not prejudice Plaintiff because she "will be spared having to duplicate her efforts in both the arbitration and this action." (ECF No. 29 at 9.) The CRA Defendants contend that "Plaintiff and Happy Money are in a better position to determine the accuracy of the Happy Money account" than credit reporting agencies such as the CRA Defendants. *Id.*

Plaintiff contends that a stay would "significantly impair [her] ability to develop evidence and effectively prosecute her case, and it will delay the satisfaction of her right to relief." (ECF No. 37 at 4.) Plaintiff contends that there is no way to predict when the arbitration will be resolved,[6] and "[t]he longer that Plaintiff is forced to wait to conduct necessary discovery, the more likely it is that important memories will fade, witnesses will become difficult to locate, and essential documents will be lost." *Id.* at 15–16.

The Court is unpersuaded by the CRA Defendants' contention that staying this action would benefit Plaintiff by avoiding a duplication of effort. As the Central District of California noted when denying a motion for a stay under similar circumstances: "Discovery processes in arbitration can differ from federal court, and the CRA Defendants cannot guarantee that all relevant facts to their investigation will be uncovered and adjudicated in an arbitration *that does not include them*." *Seaman v. Am. Express Nat'l Bank*, No. 8:23-cv-02472-HDV (ADSx), 2024 WL 4745472, at *2 (C.D. Cal. June 12, 2024). Moreover, "[u]ndue delay is undoubtedly a form of harm for a court to consider." *Hartsock v. Discover Bank*, No. 5:22-cv-00256-SSS-KKx, 2022 WL 21769172, at *3–4 (C.D. Cal. Sept. 29, 2022) (denying a motion to stay where credit reporting agency defendants similarly sought

---

[6] According to the most recent Joint Status Report filed by Plaintiff and Happy Money, "an arbitrator was appointed to the action" on March 4, 2025, and the parties then had "15 calendar days to serve a notice of disqualification of the arbitrator." (ECF No. 50 at 2.)

to stay the litigation of the claims against them pending the resolution of the plaintiff's arbitration with the bank that furnished the credit information). The Court accordingly concludes that Plaintiff would be prejudiced by delaying the discovery process and the litigation (or, ultimately, arbitration) of her claims against the CRA Defendants.

The Court concludes that the CRA Defendants have not demonstrated that the first *Landis* factor weighs in favor of a stay.

### ii.    Harm to the CRA Defendants from Going Forward

The CRA Defendants contend that, absent a stay, there is a risk that allowing the arbitration and the litigation to proceed in parallel could lead to inconsistent results. The CRA Defendants contend that both proceedings involve the "threshold question" of "whether the Plaintiff owed a balance on the Happy Money account thereby directly impacting whether the reporting of such information is accurate." (ECF No. 29 at 8.) Thus, the CRA Defendants contend, "[a]ny potential inconsistencies could be avoided by staying the claim against the CRA Defendants until after the resolution of the arbitration since some questions of fact common to both actions are likely to be resolved during the arbitration." *Id.* Relatedly, the CRA Defendants contend that they would likely incur hardship if the litigation proceeds because "time and money would be wasted needlessly litigating the same substantive issues when the other proceeding would likely eliminate, if not, simplify, those issues." *Id.* at 7. The CRA Defendants also contend that permitting the arbitration and the litigation to proceed in parallel "may violate the one satisfaction rule." *Id.* at 8.

Notably, the CRA Defendants bear the burden of demonstrating that a stay of this action is justified, yet their Motion fails to explain why the findings in the arbitration—which involves only Plaintiff and Happy Money—would have preclusive effect on the litigation of Plaintiff's claims against the CRA Defendants.[7] Setting aside the question of

---

[7] Plaintiff contends that the doctrines of res judicata and collateral estoppel would not apply to the arbitrator's findings because, as to res judicata, "there is no identity between the claims or the parties"

preclusive effect, the Court observes that the arbitration will not consider all the elements of Plaintiff's claims against the CRA Defendants. In order to prevail on her claims against the CRA Defendants, beyond showing that the information reported about her Happy Money account was inaccurate, Plaintiff must also demonstrate that the CRA Defendants failed to "follow reasonable procedures to assure maximum possible accuracy" and that they failed to "conduct a reasonable reinvestigation." *See* 15 U.S.C. §§ 1681e(b); 1681i(a)(1)(A). These additional elements of Plaintiff's claims against the CRA Defendants will not be subject to discovery or resolution during Plaintiff's arbitration with Happy Money. *See Neufeld v. Cap. Bank N.A.*, No. 1:18-cv-01012-LJO-SKO, 2019 WL 13261667, at *2 (E.D. Cal. May 6, 2019) (denying the credit reporting agency defendants' motion to stay in part because "[e]ven assuming the information furnished by OpenSky is deemed in arbitration to be inaccurate, the FCRA claims against CRA Defendants here will still necessarily require that Plaintiff prove CRA Defendants failed to follow proper procedures for verifying the information or failed to properly re-investigate."). Courts have denied motions to stay that asserted similar arguments because "the accuracy of the account information is only one element of Plaintiff's claims," and thus "the CRA Defendants fail[ed] to demonstrate that a stay would result in substantial savings or simplification of the legal and factual issues in [the litigation]." *Noriega v. Citibank*, No. 2:21-cv-08154-FLA (JPRx), 2022 WL 2167454, at *1–2 (C.D. Cal. Apr. 4, 2022); *see also Hartsock*, 2022 WL 21769172, at *3 ("[I]f the arbitrator finds that [the furnisher] indeed reported inaccurately, the Court will have been spared only the effort of resolving only that single question. And in the meantime, Plaintiff will have been forced to postpone most or all

---

(ECF No. 37 at 10), and as to collateral estoppel, the Supreme Court has "recognized that arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings," and the CRA Defendants have made no showing that the "case-specific factors" that would render the arbitrator's findings preclusive are applicable here, *id.* at 11 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985)). Because the Court concludes for separate reasons that the CRA Defendants fail to show that they would be harmed absent a stay, the Court does not address Plaintiff's arguments that the arbitrator's findings would not have a preclusive effect in this action.

discovery on the other significant elements of her claims against the [CRA Defendants] for the entire duration of arbitration."). Here, too, the Court is unconvinced that the mere overlap of a single factual question—whether Plaintiff owed a balance on her Happy Money account—merits a stay of Plaintiff's claims against the CRA Defendants until the arbitration is concluded.

Moreover, because the CRA Defendants are not parties to the arbitration, only Plaintiff is at risk of being subjected to the harm of inconsistent results. Courts within the Ninth Circuit have rejected credit reporting agencies' similar arguments that the prospect of inconsistent results militates in favor of a stay. *See, e.g.*, *Hartsock*, 2022 WL 21769172, at *3 ("[T]he CRA Defendants are not parties to the arbitration and have not established that they would be otherwise bound by its conclusions."); *Seaman*, 2024 WL 4745472, at *3 ("Only the Plaintiff, who is bound by both the arbitration and this action, is potentially subject to inconsistent findings."); *Noriega*, 2022 WL 2167454, at *2 ("The mere fact that Plaintiff's arbitration with Citibank may lead to rulings or factual determinations that are not binding with respect to the CRA Defendants and that may be inconsistent with this court's rulings is insufficient to warrant a stay of proceedings."). Accordingly, the CRA Defendants fail to demonstrate that the risk of inconsistent results is a "harm" that they would face if this litigation proceeded in parallel to the arbitration.

The CRA Defendants cite only one case where a district court within the Ninth Circuit stayed a plaintiff's claims against credit reporting agencies under similar circumstances. *See Karmolinski v. Equifax Info. Servs., LLC*, Civ. No. 04-1448-AA, 2005 WL 7213289, at *5 (D. Or. Oct. 31, 2005) (staying the plaintiff's claims against credit reporting agencies pending the conclusion of the plaintiff's arbitration with the furnisher because "[i]f the information [the furnisher] provided to the credit reporting agencies was accurate and its actions did not violate the FCRA, plaintiff may not have a cause of action against the credit reporting agencies"). *Hartsock* found *Karmolinski* "wholly unpersuasive in light of the equally analogous, more recent, and more thoroughly reasoned decisions by [the Central District of California] and the Eastern District of California." 2022 WL

21769172, at *3 (collecting cases). The Court finds the reasoning in *Hartsock* and the cases cited therein to be more persuasive than the reasoning in *Karmolinski*.[8]

Additionally, the CRA Defendants' reference to the one satisfaction rule fails to persuade the Court that a stay of this action is appropriate. "The one satisfaction rule reflects the equitable principle that a plaintiff who has received full satisfaction of its claims from one tortfeasor generally cannot sue to recover additional damages corresponding to the same injury from the remaining tortfeasors." *Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015). However, "[c]ourts in the Ninth Circuit have determined the 'one satisfaction rule' does not apply in FCRA cases." *Cheetham v. Specialized Loan Servicing LLC*, No. 2:20-CV-762-JCC-DWC, 2021 WL 2137823, at *2 (W.D. Wash. May 26, 2021) (citing *Contreras v. Kohl's Dep't Stores, Inc.*, EDCV 16-2678-JGB (KKx), 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017)); *see also Salgado v. CitiGroup Corp.*

---

[8] The other cases from within the Ninth Circuit that the CRA Defendants rely upon are either factually or procedurally inapposite. For example, *Bischoff v. DirecTV, Inc.*, which the CRA Defendants cite as an example of a district court staying proceedings due to the risk of inconsistent findings, was not an FCRA case, but an antitrust action. 180 F. Supp. 2d 1097, 1102 (C.D. Cal. 2002). Moreover, although the court granted a motion to stay in *Bischoff*, the court went on to note that "[t]he cases cited by Plaintiffs do indeed indicate that a stay of litigation is not always appropriate when all parties to a litigation are not bound by an arbitration agreement." *Id.* at 1115. Other cases cited by the CRA Defendants are also factually distinct. *See, e.g.*, *U.S. ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (upholding the district court's stay of a defendant's third-party claim pending arbitration of the plaintiff's contractual claim against the defendant); *Aircraft Inv. Res., LLC v. Gulf Aircraft Maint. Co.*, No. 05-6373-AA, 2006 WL 8459699, at *1, *4–5 (D. Or. Apr. 26, 2006) (in a case "alleging misappropriation of trade secrets," staying the plaintiff's claims against the other defendants while the plaintiff arbitrated claims against a separate defendant in part because plaintiff's counsel had "admitted" that the litigation and arbitration "involve[d] the same facts and legal issues" and the defendants to the litigation were foreign entities that would be "substantially burdened defending [the] case in Oregon, and arbitration may obviate these expenses by resolving [the] case entirely").

The CRA Defendants also cite *Gorman v. Wolpoff & Abramson, LLP*, for the proposition that "the furnisher of credit information stands in a far better position to make a thorough investigation of a debt than the [credit reporting agency] does on reinvestigation." 584 F.3d 1147, 1156 (9th Cir. 2009). However, *Gorman* did not evaluate the propriety of staying proceedings; instead, the Ninth Circuit made the above observation in support of its conclusion that, like a credit reporting agency's investigation, a "furnisher's investigation pursuant to § 1681s–2(b)(1)(A) may not be unreasonable." *Id.* at 1156–57. *Gauci v. Citi Mortgage* similarly did not involve a request for a stay, but rather a summary judgment motion regarding a dispute over "the legal validity of a debt." No. 2:11-cv-01387-ODW(JEMx), 2012 WL 1535654, at *6 (C.D. Cal. Apr. 30, 2012).

*Holdings*, 608 F. Supp. 3d 984, 988 n.4 (C.D. Cal. 2022) (denying a motion to stay and noting that although "[t]he CRA Defendants … express a vague concern that proceeding in parallel may violate the one satisfaction rule," "courts in this circuit have found that this rule does not apply to the FCRA."). Notably, the sole Ninth Circuit case the CRA Defendants cite in support of their contentions regarding the one satisfaction rule did not involve FCRA claims. *See Uthe Tech. Corp.*, 808 F.3d at 759–60 (discussing the one satisfaction rule in the context of alleged violations of the Racketeer Influenced and Corrupt Organizations Act).

In any event, at this stage in the proceedings, the Court need not decide whether the one satisfaction rule is applicable here because the CRA Defendants' argument concerning the rule "is speculative and bears no relevance at this stage in the litigation, where there is no indication if or how the rule may actually be violated." *Noriega*, 2022 WL 2167454, at *1; *see also Seaman*, 2024 WL 4745472, at *3 (same); *Neufeld*, 2019 WL 13261667, at *2 (denying a motion to stay where the defendants "offer[ed] no convincing explanation how the one-satisfaction rule would become an issue or how any risk of violating the rule is ameliorated by staggering the two proceedings"). Even assuming that the one satisfaction rule does apply to this action, the CRA Defendants fail to explain why the Court cannot resolve any potential issues with this rule after the litigation concludes. *See Cheetham*, 2021 WL 2137823, at *2 ("[E]ven if the 'one satisfaction rule' does apply, offset issues can be resolved post-trial.").

The Court concludes that the CRA Defendants have not demonstrated that the second *Landis* factor weighs in favor of a stay.

### iii.    Orderly Administration of Justice

The CRA Defendants contend that the potential for inconsistent findings in the arbitration and this action "may hinder the pursuit of judicial efficiency." (ECF No. 29 at 7.) The CRA Defendants also generally contend that a stay is "in the best interests of judicial economy and efficiency." *Id.* at 4.

26

Here, it is not clear that a stay would promote the orderly administration of justice. The Court has already concluded that the purported risk of "inconsistent results" does not warrant a stay of this action. Additionally, as discussed above, in order to succeed on her claims against the CRA Defendants, Plaintiff must prove additional elements that will not be eligible for discovery or resolution during her arbitration with Happy Money. Accordingly, it is not clear that a stay is in the best interests of judicial economy and efficiency. *See Seaman*, 2024 WL 4745472, at *4 ("The point here is that whatever findings are made in arbitration vis-à-vis [the furnisher], a stay is not likely to result in a net savings of judicial resources."); *Neufeld*, 2019 WL 13261667, at *2 ("There is no clear-cut benefit to staying this case while arbitration proceeds against [the furnisher]—the only sure result is protracting this litigation.").

The Court concludes that the CRA Defendants have not demonstrated that the third *Landis* factor weighs in favor of a stay. The CRA Defendants have accordingly failed to show that a stay of this action is appropriate at this time.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Compel Arbitration (ECF No. 24) is denied without prejudice.

IT IS FURTHER ORDERED that the Joint Motion to Stay Pending Arbitration Between Plaintiff and Defendant Happy Money, Inc. (ECF No. 29) is denied.

IT IS FURTHER ORDERED that, as previously ordered, within three (3) days of the entry of this Order, counsel for the parties must jointly contact Magistrate Judge Berg's chambers at (619) 557-6632 to obtain a new date for the Early Neutral Evaluation and Case Management Conference in this action. (*See* ECF No. 27.)

Dated:  April 15, 2025

Hon. William Q. Hayes
United States District Court